# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

DARA VAHID,

        Plaintiff,

v.                                                                                                                                  No. CIV 02-558 BB/WDS

PRESBYTERIAN HEALTHCARE
SERVICES ESPANOLA HOSPITAL,

        Defendant.

## MEMORANDUM OPINION

THIS MATTER comes before the Court for consideration of a motion for summary judgment (Doc. 32) filed by Defendant. The Court has reviewed the submissions of the parties and the relevant law. For the reasons set forth below, the summary-judgment motion will be granted and this case dismissed.

Plaintiff began working for Defendant as a surgeon, on a "locum tenens" or as-needed basis, in the spring of 2000, when one of Defendant's regular surgeons began to have health problems. At the time, Plaintiff, who was Iranian, was over sixty years old. Plaintiff maintains he became a full-time employee of Defendant in June 2000, although Defendant disagrees with this contention. Defendant terminated the relationship between the parties in August 2000. Plaintiff then exhausted his administrative remedies and filed this lawsuit. Plaintiff has raised claims of national-origin and age-based discrimination, under Title VII, §§42 U.S.C. 2000e to 2000e-17, and the Age Discrimination in Employment Act ("ADEA"), §§29 U.S.C. 621-634; a state-law claim of wrongful termination; a state-law claim of breach of contract; and a state-law claim of breach of an implied covenant of good faith and fair dealing. Defendant has moved for summary judgment on all claims.

"Summary judgment is proper only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Quaker State Minit-Lube, Inc. v. Fireman's Fund Ins. Co.*, 52 F.3d 1522, 1527 (10th Cir. 1995) (quoting Fed. R. Civ. P. 56(c)).  "All facts and reasonable inferences must be construed in the light most favorable to the nonmoving party." *Id.*  On a motion for summary judgment, the issue is "not whether [the court] thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).  "Nevertheless, a jury question does not exist because of the presence of a mere scintilla of evidence; rather, there must be a conflict in substantial evidence to create a jury question." *Walker v. NationsBank of Florida*, 53 F.3d 1548, 1555 (11th Cir. 1995). The Court will consider Defendant's motion in light of these standards.

**Discussion**

**Breach of Contract Claim:**  The main issue raised and discussed by the parties is whether Plaintiff's employment relationship with Defendant was at will, or whether an oral or implied employment contract existed between the parties.  Plaintiff maintains he could be terminated only for good cause, and only after Defendant followed the progressive discipline procedure outlined in Defendant's employment policies.  Plaintiff also maintains he was terminated due to discrimination on the basis of race or age, which is a breach of Defendant's equal employment opportunity policy and therefore a breach of contract.

It is undisputed that when Plaintiff first began working for Defendant, he was at most an at-will employee.  The initial letter offering Plaintiff employment specified that it would be on an as-needed basis, and that Plaintiff would not be entitled to receive any benefits offered to regular full-

time or regular part-time employees. (Exh. A, MSJ) Plaintiff, however, claims that his status as a locum tenens, or as-needed, employee changed in June, when he had the following conversation with Dr. Daugherty:[1] Dr. Daugherty asked Plaintiff whether he would like to be full-time, and Plaintiff said he would. Dr. Daugherty then asked whether Plaintiff planned to stay several years, and Plaintiff said he did. In response, Dr. Daugherty said, "Well, then, we may not want to try to get somebody else in here." (Pltf. dep. pp. 41-42, Exh. 1, Resp. to MSJ) This was the only conversation Plaintiff had with anyone about becoming a regular, full-time employee with Defendant. (*Id.*) In addition, there is no evidence that Plaintiff signed any employment documents. Finally, Plaintiff did not start receiving any benefits after this conversation, such as retirement or health insurance. (Pltf. dep. p. 43, *id.*) The only evidence Plaintiff has offered of a change in his employment status, therefore, is the above exchange between Dr. Daugherty and Plaintiff.

The conversation described above, without more, is insufficient to change Plaintiff's status from an at-will, as-needed employee to an employee covered by all the protections offered by Defendant's employment policies. In order to create an implied contract of employment in New Mexico, the employer's "promise that is claimed to have altered the presumed at-will term [must] *be sufficiently explicit* to give rise to reasonable expectations of termination for good cause only." *Hartbarger v. Frank Paxton Co.*, 857 P.2d 776, 784 (N.M. 1993). Dr. Daugherty's statement to Plaintiff does not meet this test. He told Plaintiff that Defendant "may" not want to look for another surgeon, which is an inherently equivocal statement. Furthermore, nothing about Plaintiff's day-to-day relationship with Defendant changed; there is no evidence of a change in compensation, and he did not begin to receive any benefits that might be associated with regular employment. The Court

---

[1]Dr. Daugherty was Defendant's regional medical director, and participated in the decision to hire Plaintiff and in the decision to terminate the relationship between Defendant and Plaintiff.

3

holds that Dr. Daugherty's statement could not have given rise to any reasonable expectations that Plaintiff's status had been changed from an at-will employee to an employee covered by the protections of Defendant's employment policies.

The Court also notes that Dr. Daugherty's statement, even if construed as sufficient to make Plaintiff a full-time employee rather than an as-needed employee, does not specify what type of employee Plaintiff would be. In particular, the statement says nothing about whether Plaintiff would be an employee subject to, and covered by, the disciplinary policies (including the progressive discipline policy) contained in the employment policies. The evidence submitted to the Court indicates that Defendant's disciplinary policies apply only to "non-exempt" and "special exempt" employees. (Exh. E, MSJ) Dr. Daugherty's statement to Plaintiff certainly cannot give rise to a reasonable expectation that Plaintiff would be considered a particular type of employee, one of the two types protected by the progressive discipline policy.[2] In sum, there is no evidence in this case of a promise by Defendant that is sufficiently specific to alter Plaintiff's status from an at-will employee to an employee terminable only for good cause, and protected by Defendant's progressive-discipline policies.

As noted above, Plaintiff also argues there was a breach of contract because Defendant breached its equal employment opportunity policy, which states that Defendant provides equal opportunities to all employees without regard to national origin, age, or many other special characteristics. (Exh. 5, Resp. to MSJ) The New Mexico Court of Appeals, stating that " General policy statements of a non-promissory nature contained in an employee handbook are insufficient to create an implied contract," has held that a statement to the effect that an employer is an equal

---

[2] It is possible, of course, that all of Defendant's regular employees are considered either non-exempt or special exempt employees, so that all of them are covered by the policy. No evidence of this, however, has been submitted to the Court.

opportunity employer is not sufficient to be the basis of a breach-of-contract claim. *Stieber v. Journal Publ'g Co.*, 901 P.2d 201, 205 (N.M. App. 1995). Other courts around the country have agreed that general statements of company policies against discrimination do not create a contract, and may not be sued upon in a breach-of-contract claim. *See, e.g., Peralta v. Cendant Corp.*, 123 F.Supp.2d 65, 83-84 (D. Conn. 2000); *Ashman v. Ass'n Health Servs.*, 1998 WL 310687 (Wash. App. 1998, unpublished); *Howard v. Wolff Broad. Corp.*, 611 So.2d 307, 310-11 (Ala. 1992); *MacGill v. Blue Cross of Md.*, 551 A.2d 501 (Md. App. 1989). The Court agrees that general, aspirational statements of company policy not to discriminate are not contractual in nature. This aspect of Plaintiff's breach of contract claim is without merit as well.

**Breach of Implied Covenant of Good Faith and Fair Dealing:** This claim is actually another form of breach of contract. *Bourgeous v. Horizon Healthcare Corp.*, 872 P.2d 852, 857 (N.M. 1994). However, this type of action does not exist if the relationship between the parties is an at-will relationship. *Melnick v. State Farm Mut. Auto. Ins. Co.*, 749 P.2d 1105, 1109 (N.M. 1988). Since the employment relationship between Plaintiff and Defendant was at will, Plaintiff may not bring this claim.

**Wrongful Termination:** As an alternative to his breach of contract claims, and recognizing that the Court might find an at-will relationship existed, Plaintiff contends he was terminated in violation of public policy. The public-policy exception to an at-will employer's right to discharge for any reason is well-established in New Mexico. *Michaels v. Anglo American Auto Auctions*, 869 P.2d 279, 280 (N.M. 1994). Plaintiff argues that he was terminated due to discrimination on the basis of either national origin or age, and that such a termination violates New Mexico's public policy outlawing these types of discrimination.

The Court agrees that New Mexico public policy prohibits discrimination on the basis of age or race. However, the Court disagrees with Plaintiff's argument that he may bring a tort action for retaliatory discharge, simply because the claimed discharge was motivated by discrimination. Plaintiff overlooks the fact that New Mexico's public-policy exception to the at-will employment doctrine has been limited, to date, to *retaliatory* discharge claims. *See, e.g., id.* In other words, where an employee is discharged in retaliation for doing something or refusing to do something, and public policy requires that the employee's action be protected, a tort claim for retaliatory discharge will lie. *Id.* (for an employee to recover under the tort of retaliatory discharge, the employee must demonstrate that he was discharged for performing an act authorized or encouraged by public policy, or for refusing to do something that public policy would condemn). However, Plaintiff's claim is not that he was discharged in retaliation for doing something, but that he was discharged for being Iranian and for being over sixty years of age. Plaintiff's state-law remedy for unlawful status-based employment terminations is provided by statute, in the New Mexico Human Rights Act, NMSA § § 28-1-1 to -15. New Mexico has thus far not extended the retaliatory discharge tort to situations of pure discrimination, rather than retaliation. This Court, therefore, declines to recognize such a cause of action under the circumstances of this case.

Plaintiff also bases his wrongful-termination claim on the fact that he witnessed several acts of malpractice by other doctors employed by Defendant. However, as discussed above, the New Mexico tort of wrongful termination is a retaliatory-discharge tort. Simply by witnessing acts of malpractice, Plaintiff did not perform an act encouraged by public policy or refrain from performing an act that would have been contrary to public policy. Had Plaintiff reported the acts of malpractice to someone in a position to address the issue, and been fired for making those reports, he might have an argument that a retaliatory-discharge claim should be recognized. Since there is no evidence he

made such reports, the alleged fact that he witnessed acts of malpractice is not sufficient to support the wrongful-termination claim he is attempting to raise.

**Title VII and ADEA Claims:** In analyzing Plaintiff's discrimination claims, the Court applies the same analysis to the Title VII national-origin claim and to the ADEA claim. *See, e.g., Garrett v. Hewlett-Packard Co.*, 305 F.3d 1210, 1216 (10th Cir. 2002) (applying same test to both types of claims). The Court first determines whether Plaintiff has produced any direct evidence of discrimination. If not, the Court applies the familiar *McDonnell Douglas* burden-shifting framework. *See MacDonald v. Delta Airlines, Inc.*, 94 F.3d 1437, 1441 (10th Cir. 1996) (applying test first created in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)).

Plaintiff suggests he has provided direct evidence of discrimination. He points first to the fact that Dr. Daugherty told him another doctor, Dr. Rayan[3], recommended that Plaintiff be terminated. (Pltf. dep. p. 71, Exh. 1, Resp. to MSJ) Furthermore, an unidentified nurse or other employee told Plaintiff that Dr. Rayan is the head of the Ku Klux Klan in Espanola, and does not like foreigners. (Pltf. dep. pp. 88-90, Exh. F, MSJ) This "evidence," however, is pure hearsay and may not be considered for purposes of summary judgment, just as it would not be admissible at trial. *Starr v. Pearle Vision, Inc.*, 54 F.3d 1548, 1555 (10th Cir. 1995). Plaintiff also notes that another doctor employed by Defendant, Dr. Dickinson, told Plaintiff that he was "too old." There is no evidence that Dr. Dickinson was involved in any way in the decision to terminate Plaintiff's employment. Therefore, his comment was merely a stray comment by a person who was not a decision-maker, and does not provide any direct or circumstantial evidence of discrimination. *See Cone v. Longmont United Hosp. Ass'n*, 14 F.3d 526, 531 (10th Cir.1994) ( age-related comments by non-decision-

---

[3]This doctor's name has been spelled both "Ryan" and "Rayan." The Court is unsure of the correct spelling, and will use the latest spelling provided by Defendant, who employed Dr. Rayan.

makers are not material in showing that employer's action was based on age discrimination). Plaintiff has therefore failed to provide any direct evidence that discrimination was the motive behind his termination, and the Court turns to the *McDonnell Douglas* burden-shifting test.

Under the *McDonnell Douglas* framework, a plaintiff is first required to make a prima facie showing that discrimination was the reason his employment was terminated. If the plaintiff succeeds in doing so, the burden shifts to the employer to provide a facially nondiscriminatory reason for the layoff. Once the employer provides such a reason, the burden shifts again to the plaintiff, to provide evidence indicating the employer's proffered neutral reason was actually a pretext for discrimination. *See generally MacDonald*.

In this case, Defendant has not argued that Plaintiff failed to make a prima facie showing of discrimination. Therefore, the Court proceeds directly to the facially neutral reason offered by Defendant as the ground for the termination. Defendant claims, and has introduced evidence to support that claim, that Plaintiff's employment was terminated because Plaintiff was not recording sufficient information on the patient charts. This inadequate documentation was "an issue of frustration" for Plaintiff's clinical colleagues, and Plaintiff was eventually terminated because of the problem. (Exh. E, MSJ, Daugherty affid.) Defendant's proffered explanation for the termination is not based on national origin or age, and is therefore a neutral reason sufficient to shift the burden to Plaintiff, to provide evidence that the proffered reason was actually a pretext for discrimination.

Plaintiff offers two pieces of evidence in support of his claim of pretext. First, he relies on his own opinion that his record-keeping, or clinical documentation, was not inadequate. His subjective opinion of his own performance, however, is not entitled to any weight; it is his supervisors' opinions of his performance that matter. *See Shorter v. ICG Holdings, Inc.*, 188 F.3d

1204, 1209 (10th Cir.1999) (employee's subjective perception of his own performance not sufficient to show pretext; only supervisor's perception is relevant).[4]

The other evidence relied on by Plaintiff is the fact that on July 1 and August 1, he received letters of commendation from the hospital's quality assurance committee. These letters of commendation applauded Plaintiff for "keeping up with" the burdensome task of "Medical Records." A letter of commendation is issued if a doctor, at the end of a month, has no charts left to be completed. Plaintiff contends these letters of commendation show that the concerns about his clinical documentation were pretextual. As Defendant argues, however, the letters of commendation are concerned only with the *quantity* of medical records produced by Plaintiff--if he had no charts left uncompleted, he received such a letter. The problem which led to Plaintiff's termination, on the other hand, had to do with the *quality* of the medical records prepared by Plaintiff. At his deposition, Plaintiff admitted that he had been criticized for the brevity of his chart notes, by both the hospital administrator and Dr. Daugherty. (Pltf. dep. pp. 43-46, Exh. 1, Resp. to MSJ) The fact that Plaintiff completed his documentation in a timely manner does not indicate that he was completing the documentation in a satisfactory manner.

It must also be noted that the letters of commendation were not issued by Dr. Daugherty or the hospital administrator, who were the decision-makers with respect to Plaintiff's termination. If either one of those individuals had been involved in the commendation letters, while at the same time

---

[4]The weight afforded Plaintiff's own opinion of his performance would be different if he had offered specific facts, rather than a general opinion, tending to establish that his clinical documentation was adequate. Instead, however, Plaintiff admitted that he disagreed with the extent of documentation that other doctors seemed to require. He stated that he did not believe he needed to record every normal result, and only recorded things that were unusual or significant. (Pltf. dep. pp. 47-48, 53-55) Therefore, while Plaintiff had a subjective perception that his documentation was adequate, this perception is not evidence that the documentation met Dr. Daugherty's standards, rather than Plaintiff's own standards.

criticizing Plaintiff's record-keeping, an inference of pretext might arise, since it might be considered inconsistent to praise one aspect of record-keeping if another aspect was so deficient as to require termination.  However, there is no evidence that Dr. Daugherty or the administrator had anything to do with the commendation letters, and the fact that one supervisor or fellow employee views an employee's performance differently than another, without more, does not raise an inference of pretext or discrimination .  *Cf. Rodriguez-Cuervos v. Wal-Mart Stores, Inc.*, 181 F.3d 15, 20 (1st Cir. 1999) (two previous positive evaluations, from different supervisor, did not raise inference that subsequent poor evaluation from different supervisor was pretextual); *Orisek v. American Inst. of Aeronautics and Astronautics*, 938 F.Supp. 185, 190-91 (S.D.N.Y. 1996).  In addition, there is no evidence that the chairperson of the quality assurance committee, who sent out the letters, had in any way reviewed Plaintiff's charts to determine the substantive quality of the notes.  For these reasons, the letters of commendation do not raise an inference that the reason given for Plaintiff's termination, unsatisfactory clinical documentation, was a pretext for discrimination of any kind.[5]

**Conclusion**

 Based on the foregoing, summary judgment will be granted on all of Plaintiff's claims, and this case  will be dismissed without prejudice.

Dated this 24th day of July, 2003.

---

[5]Due to the disposition of this claim, the Court need not address Defendant's "same actor" argument:  where the same person hires and then discharges an employee within a short period of time, there is a presumption or strong inference that discrimination is not the reason for the discharge.  *See, e.g., Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 573 (6th Cir. 2002).  The Court notes, however, that a majority of the circuit courts are not comfortable affording such an inference great weight.  *Id.*

_____
BRUCE D. BLACK
United States District Judge


**ATTORNEYS**:

**For Plaintiff**:
Gilbert J. Vigil

**For Defendant**:
Scott D. Gordon
Brenda M. Maloney